May it please the court, counsel. My name is Erica Whale and I represent Fred Thompson, the petitioner and appellate in this case. Mr. Thompson is here for two issues. He's asking you that you reverse the decision of the district court denying his amended motion to vacate for two reasons. One issue being his 5th and 6th amendment rights were violated during plea discussions and negotiations as well as sentencing. And then secondly, the second issue that he received ineffective assistance of counsel. So by way of background, Fred Thompson was indicted on two counts, count one being conspiracy to possess with the intent to deliver. And then secondly, the use of a firearm during drug trafficking crimes. So just so you're aware, when they made the plea agreement, the plea agreement basically did two things. It minimized the mandatory minimum on count one down to, I believe, five years. And then on count two, it took off the mandatory life sentence that he was facing at that time. He decided to reject that plea agreement, proceeded to what he thought was a pretrial conference. Or as you know, the court engaged in kind of a lengthy discussion. This is actually Fred Thompson's, he took a direct appeal authored by Judge Kelly previously where he raised some issues. Just so the court's aware, I just kind of want to paraphrase basically what happened there. They started out, he knew that the plea agreement was rejected. The court still advised him of mandatory minimums and maximums and things like that. But then he began to explain what the plea agreement did, characterizing it. If you actually go to court, you understand that you'll have a mandatory life sentence if you lose. That means you will die in prison. Then he kind of, Mr. Thompson says, yes, I understand. I still want to proceed. But the judge comes back again saying, but you understand that I will have no choice. I have to sentence you to that mandatory. And of course, Fred Thompson again says, yes, I understand. I want to go to trial. But still, the court comes back again and starts talking about, well, this is kind of a high-risk strategy, you understand. One hand, you have 12 years. The other hand, you're looking at life. And again, Mr. Thompson says, yes, I understand. I want to proceed. And the court does that one more time saying, basically, if we're going to trial starting at noon, the train leaves the station. This is your one chance, basically, to look at the 12 years instead of the life. And Mr. Thompson again says, yes. So finally, they move on to some pretrial matters. But before the actual hearing ends, they took a 15-minute recess. And as this court has already indicated, what happened in that 15 recess on direct appeal, we weren't really aware of at that time. Mr. Thompson submitted an affidavit in support of his petition here today, basically summarizing what happened in that 15 minutes. He recessed with his attorney. And his attorney then said, I think that you should plead guilty. And the reason I think you should plead guilty is because, as you heard the judge is saying right now, you're looking at possibly 12 years. And of course, his attorney said to him, no, he can't explicitly say to you, yes, I'm going to give you 12 years. But that's kind of what he's indicating. Based on that conversation, they then returned to the courtroom. Mr. Thompson pled guilty. Why wouldn't that just be a mistake of counsel's interpreting what the judge meant? It's kind of, to answer that question, it's very convoluted, basically, in this area. Because what happened with counsel there was, my understanding, wasn't a reasonable expectation for that attorney to be saying, you know, that's not his interpretation of what could happen. He was, one, adopting what the court did, which Mr. Thompson argues was inserted itself into plaintiff discussions inappropriately, indicating, you know, that, yes, the 12th sentence was happening. And secondly, you know, he uses that to persuade the attorney. Basically, Mr. Thompson's arguing, you know, above and beyond that, he didn't tell me, you know, what Rule 11 was or what it meant, and that the judge couldn't be engaging in those conversations. You know, in that 15 minutes, did they really go back over the entire plea agreement where he was saying, you understand that this life sentence could be hanging over your head? And I'll get more to the ineffective assistance of counsel. Really, that's just the most significant portion of this, is kind of what we're saying. Because without his attorney there, who's meant to protect him and safeguard, you know, his right to be represented and understand, the problem is his attorney wasn't necessarily explaining to him, you know, what those rules are, what those procedures are. Instead, he basically adopted what the court was saying or indicating that this 12-year sentence is. Is there anything, and I think I know the answer to this, but was there anything offered up by Mr. Thompson post-15-minute hearing? In other words, look, once I saw the pre-sentence report, I again talked to my lawyer, or I got to the sentencing hearing, and I said, what's going on? This isn't the 12 years. Is there anything proffered like that from Mr. Thompson in these papers? Your Honor, correctly, no, is basically the short answer to that. And as in your opinion and on the direct appeal, there are some bad facts that we're looking at, how, you know, Mr. Thompson just basically kind of went along with everything. You know, after that, he didn't object. But again, when we're talking about this plea change hearing, you know, he didn't know that this Rule 11 existed. And he's thinking that, okay, I know the judge can't say that, but my attorney said that's kind of what he's saying. It's kind of the improper issue there. You know, we're kind of operating underneath the radar is the problem I'm going to try to relay to you. And then secondly, it's just I understand that then he went to sentencing and he didn't object or anything like that. There's a pre-sentence investigation that are some bad facts there for him about how he didn't assert that. And I understand that plays, you know, to the role. But that's where this ineffective assistance of counsel really just exacerbates the fact mostly because his attorney basically advised him, I think you should take the deal. This judge is a good judge. I know he can't say he's going to give you 12 years, but he's basically saying that. Well, what's different now than on the direct appeal? Your Honor, respectfully, the opinion on the direct appeal came out that basically what the judge did was a close call. And then this court went on to say, you know, had Mr. Thompson did anything that basically showed us that his substantial right was violated or that he wouldn't have pled guilty, you know, absent these Rule 11 violations, you know, this might be a different story. And that's kind of what we're doing here on collateral view. As you know, the court prefers ineffective assistance of counsel on collateral attacks under 2255 because it allows us to open the record further. So now we do have an affidavit from Mr. Thompson's where he indicates, you know, what actually happened during that 15-minute recess, why he was actually persuaded that he actually did see this as a promise of 12 years, which was later breached. And, you know, the fact that, no, his attorney wasn't saying, hey, but let me caution you, you're still looking at a life sentence. You know, you still have to consider the other terms of the plea agreement. You still have to be aware. You know, instead, I think what counsel did there was go a little bit further and kind of cross the line in saying, oh, there are these back channels that we're operating. Let me tell you, I know this judge. He's a good judge. And as you know, the ABA standards don't allow you to put forth that appearance of impropriety. And I know that those aren't always enough to say, no, that's not, you know, a reasonable standard of practice. But it still, I think, speaks volumes, especially when we're talking about the credibility of this individual sitting before the court, deciding in a vulnerable position, you know, okay, I want to go to trial, knowing he could be looking at a life sentence. You know, and then you have the judge up there reminding you over and over again that this is a high-risk strategy, and it's just something you need to be aware of. Now he goes back to his counsel. The one person who's supposed to lay everything out for him is advising him just to do specifically that, take the deal. And he doesn't explain, you know, that that was improper. He just basically says, take the deal. He's a good judge. I know he can't say it's 12 years, but that's what he's indicating. And I think- What's a good case for what you're proposing was heard? Well, there's several cases basically involved here, and a lot of them, unfortunately, come from the Fifth Circuit. The Fifth Circuit's talking about specifically, you know, how over and over again things like that basically amount to persuasion or advocating for a certain sentence. Or as Judge Kelly indicated in her original opinion, when you're talking about high risk versus, you know, a life in prison type thing, that kind of amounts to what Rodriguez is calling coercion or basically advocating for one point, which gets onto, you know, whether or not the judge actually indicates do you have a good case or indicating you probably don't have a good case. And so, but then when we were talking about ineffective assistance of counsel, the umbrella here is if you're talking about ineffective assistance of counsel and you plead guilty based on the advice of counsel, you can only attack whether your plea was knowing and voluntary. When we start talking about knowing and voluntary, then it gets back into this whole circumstances, you know, kind of taking into consideration of everything here. And as you know, that's kind of what they're talking about in Brady and that's kind of the things that they're talking about when the Supreme Court is talking about the vulnerability of a defendant, you know, of them being unknowing in the law and just kind of preparing you for, you know, a less learned advice of the law. So basically, Fred Thompson is asking you not just to look at the Rule 11 violations again, as the United States will tell you it's a collateral attack or a lot of the case. It's different here because we're asking you to look at the Rule 11, you know, as far as his knowing and unintelligent waiver of basically pleading guilty under those terms. So at this time, I would just ask you to consider the totality of it. One last question. Do you have anything on the prejudice prong of ineffective assistance here? So the prejudice prong basically is, you know, would he have not pled guilty absent the vice of his counsel? And it kind of goes into, I believe it's the worker case, no, Harrell out of the Fifth Circuit when they're talking about there's a difference, especially when you're considering advisement, you know, before the pleas talked about and when you're talking about it after. And just, you know, again, the vulnerability and that line crossing when obviously he started the trial, no plea on the table. And something, you know, within that half an hour or whatever changed. But as you saw, you know, in the courtroom he said, no, I'm not going to do it. I want to continue the trial. So it does really get down to that 15 minutes and what occurred there. And Mr. Thompson clearly tells you at that time if it wasn't for his attorney and what his attorney advised him to do, he would have not pled guilty and he would have gone to trial. And that's the standard of prejudice. Would it require him to show some likelihood that he had a successful or capable of being successful defense? The way I understand it, Your Honor, I don't believe so. I think the standard here when we're talking about pleading guilty under a plea agreement is whether or not the advice of counsel renders it knowing and voluntary. That being said, would you have pled guilty had you not had this advice? And I think that's basically where we would be now. So with that, I'd like to reserve a few minutes for rebuttal. Thank you. Ms. Healy. Good morning. May it please the Court, Ms. Will. My name is Megan Healy and I represent the United States in this matter. With me at counsel's table is AUSA Tara Iverson. Ms. Iverson has been co-counsel on the direct appeal, the 2255, and now this appeal. She's also been involved in this case since the trial stage. I intend to spend my time this morning predominantly responding to the Court's questions. To Ms. Whalen, excuse me, any additional questions you have for me, but there are two things I'd like to note as a preliminary matter. As noted in our jurisdictional statement on page 1 of our brief, the United States does contest the Court's jurisdiction in this case. It's the defendant's burden to establish that the Court has jurisdiction. There's no question that his notice of appeal was untimely filed. The only question is whether something excuses that untimeliness. The only thing that would excuse the untimeliness is the benefit of the prisoner mailbox rule. By rule in this Court's precedent, for a defendant to be afforded the benefit of the prisoner mailbox rule, where a legal mail system is available at his institution as it is here at USP McCrary, he must take advantage of that legal mail system and use the legal mail system to have the benefit of the prisoner mailbox rule. Mr. Thompson has had two opportunities before this Court to show timeliness, both when he first filed his appeal and in response to our motion to dismiss. He submitted no evidence that he used the legal mail system at USP McCrary. Because the record has no evidence that the legal mail system was used, he does not get the benefit of the prisoner mailbox rule, and this appeal should be dismissed for lack of jurisdiction. He was on lockdown, correct, when he put this in the mail? Reportedly. And at that point when you're on lockdown, is the regular mail system and the special legal mail system basically the same thing? No, Judge Kelly, it isn't. If you look at the affidavit we submitted from Sheila Mattingly, the individual at USP McCrary who's the supervisor in charge of the legal mail system, the procedures remain different. A defendant under the institution's policies must invoke the legal mail system by writing legal mail on it and submitting it to the prison guard in charge of his area, indicating that it is legal mail. If he gives it to them and it's unsealed, it's not legal mail. It needs to be sealed and have legal mail stamped or written on it to invoke the legal mail system during a lockdown. Was that contrary to the manual, the prison manual? It is not. No? It also says you have to write it on the envelope? The manual does not address procedures during lockdown. There's nothing in the manual. The manual also says in the preface to the manual that this manual lays out the general rules, but the specific policies will be given to the individuals when they arrive at USP McCrary, and Ms. Mattingly in her declaration stated that that was what happens in this case. The other preliminary thing I would like to note, and this is noted in various points throughout our brief, is that most of the claims that are raised on appeal here are barred for various procedural reasons. With respect to the Rule 11 claims, this Court has already decided this exact issue on direct appeal. It is not appropriate to relitigate it at this point. With respect to— The ineffective assistance question was addressed on direct appeal? No, Your Honor. With respect to the ineffective assistance claims, we've covered this on pages 45 and 46 of our brief. Most of the claims—we would say all of the claims raised on appeal were not in the amended 2255 below, specifically that there was a violation of the ABA rule, that he didn't properly explain Rule 11. I went through all of these on pages 45 and 46 of our brief. As to why these are new claims on appeal that were not in the 2255, the two ineffective assistance of counsel claims that were raised in Mr. Thompson's amended 2255 were first. That Mr. Gass failed to object to the judge's purported improper participation in plea negotiations. And secondly, that Mr. Gass made an inaccurate prediction of sentence. So those are the two ineffective assistance of counsel issues that were decided— that were in the 2255 and decided by Judge Hovland at the District Court. We would argue that those were largely, if not completely, abandoned on appeal. The defendant did not—the appellant did not press those issues in his brief on appeal. But to the extent that they were appropriately raised, we responded on the merits to ensure that the court had our views on those matters. When you've got a situation like this where you've got 15 minutes where there's only two people that were present, why not hold a hearing? Did the District Court, do you think, give a reason for not just saying, hey, let's have an evidentiary hearing to get at what's going on here, or what went on here? An evidentiary hearing may be appropriate if there's a question of fact. Taking Mr. Thompson's affidavit as completely true, the facts that he brought forth, accepting those as true, he is not entitled to relief. In cases like that, there's no need for an evidentiary hearing. We've cited cases in our briefs to that effect, that for the purposes of resolving these issues in this appeal, we will assume that everything that Mr. Thompson said in his affidavit was true. And in those cases, when even taking the defendant's statement is true, when there's no relief to be afforded, an evidentiary hearing is not necessary. Judge Kelly, you asked a Ms. Whale question. Post the 15-minute hearing, whether there's anything in the record that the defendant continued to believe he was getting a 12-year sentence, and Ms. Whale answered appropriately, the answer is no. The answer is no. In response to your question, she said, reference that 15 minutes is a short time to go through an entire plea agreement and to make an intelligent decision. I would note that the record shows that Mr. Gass stated he had discussed the plea agreement with Mr. Thompson at length. It's a quote from the plea transcript. And that Mr. Thompson had actually signed the plea agreement the night before. They arrived at court that morning for a change of plea hearing. And when they arrived, Mr. Thompson informed his counsel that he had changed his mind. So it's not simply that he accepted this deal quickly in a 15-minute. This is the same plea agreement that had been disclosed days before. It's the same plea agreement that he had actually signed the night before. There hadn't been any changes to the plea agreement. Further, with your question as to whether there is anything after the 15-minute recess, the analysis and the facts are essentially the same that this Court noted on the direct appeal, that there's nothing in the record to indicate that he expected a 12-year sentence or that his attorney predicted a 12-year sentence and that that was the one motivation for the defendant. In fact, when they came back into the court, Judge Erickson informed Mr. Thompson that the jury was ready. He's under no obligation to plead guilty. That the court was not bound by the guideline collection or calculation. It would do its own calculation. He stated the court could still sentence you to a higher amount. After all of this, Mr. Thompson signed the plea agreement in open court and entered his guilty plea. Following the change of plea hearing, the pre-sentence report came out with a substantially higher guideline range of essentially 294 to 346, including the mandatory 7-year consecutive sentence for the 924C count and count 2. Even after that, Mr. Thompson didn't raise any objections, saying, wait a second, I thought I was getting 12 years. My attorney predicted 12 years. In the sentencing memorandum, there's nothing about any expectation of a sentence. They contested career offender. They argued about organizer leader. But there's nothing about any expectation of sentence. During the sentencing hearing, the defendant asked for 15 years. That would suggest that he had no expectation of 12 years. He didn't object to that. And when he had an opportunity immediately after that recommendation to address the court, he did address the court. And he asked for leniency and expressed regret over his actions, but expressed no expectation of a sentence. This Court went through the same factors on direct appeal and found that there was no effect on the defendant's substantial rights under plain error analysis. The prejudice under plain error analysis is virtually identical to the prejudice under Strickland. And so if Mr. Gast, in fact, was made an inaccurate prediction of a 12-year sentence, the defendant still cannot show prejudice under Strickland, nor do we concede that an inaccurate prediction would be deficient performance. Is there a difference between an inaccurate prediction of 12 years and an inaccurate prediction, well, you're not going to get life? Judge, we found no case where an inaccurate prediction standing alone constituted deficient performance. Whichever one of those it might be? Yes. We didn't find any case where that alone was deficient performance. Now, as we noted in our brief, most cases that we've come across involving an inaccurate prediction resolved on the prejudice ground, which I've already discussed, such as the Tina Herrera-Ortiz case. In addition to the prejudice that I outlined in the Tina Herrera-Ortiz case, there's no prejudice from an inaccurate prediction because the defendant knew the sentencing parameters. He knew what the maximum was. He knew what was available. And there's no question, of course, in this case that he did know, as this court addressed at some length in the direct appeal and as the contemporaneous record shows. Judge Smith, you asked Ms. Whale if there's any difference from the direct appeal. And I think I've addressed this, but I just want to emphasize, no, there isn't. It's the exact same argument raised. As a stand-alone argument, the exact same argument is raised.  And the defendant knows what the maximum is. And I've kind of tied in parts of this to the ineffective assistance. But when you look at it through the ineffective assistance of counsel lens, many of the same factors apply to show that there's no prejudice. But the stand-alone Rule 11 argument was decided on appeal and is the same argument raised now, as Judge Hovland did note in his order below. If the court has no more questions for me, I respectfully ask that this court dismiss the appeal for lack of jurisdiction and in the alternative, affirm the judgment of the district court in this matter. And we'll rest on our briefs. Thank you. Ms. Whale? Thank you, Your Honor. Briefly, just I want to note, this court does have jurisdiction under 1291. And above and beyond that, we already addressed the issue of whether or not the mailbox rule was actually followed in this case. Mr. Thompson indicated he was on lockdown. And he basically followed the procedures that he could. We've already addressed that you have jurisdiction, that it was a timely notice of appeal. Next, the United States continually says a lot of these issues were barred. They weren't appropriately raised. And they're not involved in the certificate of appealability. But I just want to read for you quickly what the order from the district court says as far as appealability. He said, based upon the entire record before the court, dismissal of the motion is debatable, reasonable subject to different outcome on appeal. Basically, it says it's debatable. Jurors could say two different things. And that's why we're here today. I think that opens it up to this broad interpretation of what the issues are. Moreover, this court has already established that you are allowed to sua sponte, take up issues of certificate ability that aren't actually in the appeal, especially when we consider that the petitioner pro se basically wrote the initial brief and the certificate of appealability. Let's just view it broadly. So I'd ask that you would actually consider that. And then just getting back to some of the concerns of this court when we're talking about basically the direct appeal and getting back to those bad facts. But I just want to remind the court that it specifically, one, noted the significance of that 15 minutes and the need to kind of know what happened during that time. And Mr. Thompson had provided that by affidavit. Under the rules, you're allowed to consider the affidavits as part of the record. The United States didn't get anything from Mr. Gast based on what he said happened in that, which is exactly why I believe if you don't think Mr. Thompkins' affidavit is sufficient to establish this prejudice when he's saying he only pled guilty because of his attorney and because of what happened with the district court in that involvement, then definitely this requires a remand to go back down and get an evidentiary hearing so we have an educated guess so that the district court isn't saying, well, this is a debatable issue whether or not it should be dismissed. But so we know with certainty based on the evidentiary issues in this case. And then just again, based on the involuntary and unknowing plea, I just want to remind the court it's the totality of the circumstances here. We should go back and consider whether or not it was a Rule 11 violation and how that coerced him or persuaded him to accept the deal. We should also consider whether or not in his mind the plea agreement he signed in open court was actually different than the plea agreement that he had explained in at length with his attorney the night before that he had already rejected, whether or not there was that 12-year promise. And then we have to definitely consider the advice of counsel or how counsel basically failed him in this matter and was ineffective assistance. So with that, I ask that you reverse the decision of the district court. Thank you. Thank you, Ms. Willow. The court notes that you're serving as a representative for Mr. Thompson under the Criminal Justice Act and we'd like to express our appreciation for your willingness to serve in that capacity. The court thanks both counsel for your presence and argument and consider the case submitted. We'll render decision in due course. Thank you.